# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

DENISE MARIE BENNETT,

    Plaintiff,

    v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.

_____/

Case No.  1:18-cv-00858-SKO

ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT

(Doc. 1)

## I.    INTRODUCTION

On June 20, 2018, Plaintiff Denise Marie Bennett ("Plaintiff") filed a complaint under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act").  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

///

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (Docs. 5, 6.)

## II. FACTUAL BACKGROUND

On March 30, 2014, Plaintiff protectively filed an application for DIB payments, alleging she became disabled on December 16, 2011[2] due to a back injury, neurofibroma in her neck, migraines, and arthritis. (Administrative Record ("AR") 10, 12–13, 28–29, 65, 80, 192–95, 226.) Plaintiff was born on December 16, 1961 and was 50 years old as of the alleged onset date. (AR 13, 30–31, 65, 80, 192, 226, 247.) She has a high school education and obtained an Associate of Arts (AA) degree in college. (AR 13, 31.) Plaintiff has past work experience as a tax preparer, payroll clerk, payroll supervisor, and benefits manager, and last worked full-time in 2011. (AR 12, 32–33, 232.)

### A. Relevant Medical Evidence[3]

#### 1. Medical Evidence Related to Severe Impairment of Migraines

On December 5, 2011, Plaintiff was in a car accident. (AR 321.) In a report dated December 12, 2011, family practice physician Dr. Kelli Jill Hatch noted Plaintiff never had back problems before the accident but began experiencing pain in her back and right hip/leg two days after the accident. (AR 321.) On January 30, 2013,[4] internist Dr. Brian Dolnick refilled Plaintiff's prescription for Relpax, a medication used to treat her migraines that resulted from the accident.[5] (*See* AR 408–09.) On March 15, 2013, the Kaiser Permanente neurology department scheduled Plaintiff for Botox injections to treat her migraines. (AR 477.) During a physical examination on April 19, 2013, Plaintiff reported she recently fell and injured her right foot, which increased the pain in her back and neck. (AR 521.) On May 9, 2013, Plaintiff reported to Dr. Dolnick that the fall caused her to have neck and tailbone pain and that the neck pain was giving her "really bad headaches." (AR 548–49.) Dr. Dolnick refilled Plaintiff's Relpax prescription on May 15, 2013,

---

[2] Plaintiff's original alleged onset date was December 5, 2011; at the hearing, she amended her alleged onset date to December 16, 2011. (AR 28–29, 65, 80, 192–95, 226.)

[3] As Plaintiff's assertions of error is limited to the ALJ's assessment of medical evidence and testimony related to Plaintiff's severe impairment of migraines and the resulting limitations (or lack thereof) included in Plaintiff's RFC assessment (Doc. 12 at 10–13; *see also* Doc. 13 at 6–9), only evidence relevant to those arguments is set forth below.

[4] The record indicates Plaintiff continued to receive treatment related to her car accident injuries at Kaiser Permanente about every month from December 2011 through January 2013, but the medical evidence does not include summaries of those visits. (AR 333–34.)

[5] It is unclear when exactly Plaintiff began taking Relpax, but this is the first mention in the record of her prescription for Relpax.

and she requested an appointment for Botox injections for her migraines on June 9, 2013.  (AR 551, 568.)

Plaintiff continued to receive periodic Botox injections for her migraines over the next several years, including on August 6, 2013, October 29, 2013, February 10, 2014, May 12, 2014, August 22, 2014, November 18, 2014, and November 10, 2015.  (AR 917, 1008, 1115, 1175, 1270, 1352, 1436.)  In an email to a physician in the Kaiser neurology department on December 19, 2013, Plaintiff reported having daily headaches that started with "sharp pains" behind her eyes, and stated she was taking Fiorcet twice a day and Relpax twice a week to help with the migraines.  (AR 1068.)  In the same message, Plaintiff requested additional Botox injections and a new prescription for Fiorcet.  (AR 1068.)  On March 25, 2014, she canceled an appointment with her physical therapist due to a "really bad migraine" preventing her from leaving the house.  (AR 1139.)  On September 3, 2014, Plaintiff reported to the Kaiser neurology department that she had a migraine four out of the last five days.  (AR 1285.)  During a visit to Kaiser on July 16, 2015, she presented with a migraine.  (AR 1386.)

### 2.     Relevant Opinion Evidence

#### a.     Dr. Melissa Leamer

On July 10, 2014, chiropractor Dr. Melissa Leamer submitted a medical source statement[6] in which she stated Plaintiff reported frequent, moderate neck pain with migraine headaches that "debilitated" her.  (AR 1221.)  Dr. Leamer stated that Plaintiff's prognosis was poor, and the severe "whiplash" type of injury caused by the car accident resulted in severe degenerative injuries in her back.  (AR 1222.)  Dr. Leamer opined that Plaintiff could sit 15-20 minutes with breaks to lay down, stand for 5-10 minutes with breaks to lay down, and walk for only 2-3 minutes with time to rest.  (AR 1223.)  Dr. Leamer noted Plaintiff struggles severely with mental activity due to the heavy prescription narcotics she takes for her migraines and that her mental activity is especially hindered when she is suffering from a migraine.  (AR 1223.)  Ultimately, Dr. Leamer opined that Plaintiff had failed to improve with "both conservative and invasive types of treatment" and her history of

---

[6] Prior to Dr. Leamer's statement, on November 16, 2013, orthopedist Dr. Dale Van Kirk submitted a medical source statement but did not address Plaintiff's migraines and only addressed her orthopedic issues, including back and neck pain.  (AR 324–28.)

failed surgeries rendered her "permanently disabled beginning July 2013." (AR 1222.)

     **b.**     **State Agency Physicians**

On August 26, 2014, I. Ocrant, M.D., a Disability Determination Services medical consultant, assessed Plaintiff's residual functional capacity (RFC)[7] and found that Plaintiff could (1) occasionally lift and/or carry 20 pounds and frequently 10 pounds; (2) stand and/or walk for about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform limited pushing/pulling with the upper extremities and unlimited pushing/pulling with the lower extremities, subject to the lift and carry restrictions. (AR 73–75.) Dr. Ocrant further stated Plaintiff could occasionally climb ramps, stairs, and ladders/ropes/scaffolds, could occasionally balance, stoop, kneel, crouch, and crawl, had limited overhead reach, unlimited handling, fingering and feeling, and had no visual, communicative, or environmental limitations. (AR 74–75.)

Upon reconsideration on February 27, 2015, another Disability Determination Services medical consultant, R. Fast, M.D., agreed with all of Dr. Ocrant's RFC findings and the limitations he found. (AR 89–91.)

**B.**     **Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on August 28, 2014, and again on reconsideration on February 27, 2015. (AR 96–99, 103–07.) On April 9, 2015, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 109–10.)

On December 20, 2016, Plaintiff appeared with counsel and testified before an ALJ as to her alleged disabling conditions. (AR 25–64.) Plaintiff testified that she experiences chronic pain in her back and neck and chronic migraine headaches. (AR 34–35, 42.) She stated that to treat the migraines she takes Topamax, Relpax and Fiorinal and receives Botox injections. (AR 42.)

---

[7] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

She testified that these treatments have reduced the frequency and intensity of her migraines. (AR 42.) Plaintiff takes Topamax twice a day, Relpax twice a week, and Fiorinal as needed. (AR 42–43.) She testified that she takes Relpax when she experiences an intense migraine, which happens about twice a week, and she needs to lay down for two hours each time she takes Relpax. (AR 42–43, 55.) Plaintiff stated the Fiorinal makes her "fuzzy-headed" so she tries to take the other medications instead when possible. (AR 43.)

A Vocational Expert ("VE") testified at the hearing that Plaintiff had past work as a tax preparer, Dictionary of Occupational Titles (DOT) code 219.362-070, which was sedentary work with a specific vocational preparation (SVP)[8] of 4; a payroll supervisor, DOT code 215.137-014, which was sedentary work with a SVP of 7; a benefits manager, DOT code 166.167-018, which was sedentary work with a SVP of 7; and a payroll clerk, DOT code 215.382-014, which was sedentary work with a SVP of 4. (AR 59.) The ALJ asked the VE to consider a person of Plaintiff's age, education, and with her work background. (AR 59.) The VE was also to assume this person could perform a range of light work defined as having the ability to: sit, stand, and/or walk for six hours in an eight-hour workday; occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling, crouching, and crawling; occasional climbing of ladders, ropes, and scaffolds; and only occasional bilateral overhead reaching. (AR 59–60.) The VE testified that such a person could perform Plaintiff's past relevant work. (AR 60.)

In a second hypothetical, the ALJ asked the VE to consider an individual who could perform sedentary work with the following limitations: occasional climbing of ladders, ropes, scaffolds, ramps and stairs; occasional balancing, stooping, crouching, kneeling and crawling; and occasional bilateral overhead reaching. (AR 60.) The VE testified, based on her expertise, that such a person could perform Plaintiff's past work as per the DOT. (AR 60.)

The ALJ then asked the VE to consider an individual with the limitations described in each of the first two hypotheticals except that due to a combination of medical conditions the individual

---

[8] Specific vocational preparation (SVP), as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id.*

would likely have three or more unexcused or unscheduled absences per month; would require additional breaks every two hours for 10-15 minutes to lay down; or would be unable to engage in sustained work activity on a regular basis for eight hours a day, five days a week for a 40-hour work week. (AR 60–61.) The VE testified that such a person could not perform Plaintiff's past relevant work and could not perform any work in the national economy, as employers have indicated they will not tolerate those absences or breaks over time. (AR 61.)

Plaintiff's attorney asked the VE to consider a hypothetical individual that could sit 20 minutes and then need to change position, stand 10 minutes and then need to change position, lift eight pounds frequently, five pounds occasionally, occasionally handle, and would be off task 15 percent of the day due to side effects of medication and migraines. (AR 62.) The VE testified that such an individual could not perform Plaintiff's past relevant work. (AR 62.)

## C.    The ALJ's Decision

In a decision dated June 2, 2017, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 10–20.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 12–20.) The ALJ decided that Plaintiff had not engaged in substantial gainful activity since December 5, 2011, the original alleged onset date (step one). (AR 12.) At step two, the ALJ found that Plaintiff had the following severe impairments: "Degenerative Disc Disease (DDD)"; "Lumbar Spine, Status-Post Fusion and Cervical Spine Facet Syndrome with Radiating Pain Symptoms"; "Migraine Headaches"; "Osteoarthritis"; and "Neck Neurofibroma, Status-Post Surgery." (AR 12.) The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the Listings (step three). (AR 13.)

The ALJ then assessed Plaintiff's RFC and applied the RFC assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity … We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff retained the RFC:

> to perform sedentary work as defined in 20 CFR [§] 404.1567(a) with the following non-exertional limitations: The claimant can occasionally climb ladders, ropes, scaffolds, ramps, and stairs. She can occasionally balance,

stoop, crouch, kneel, and crawl. The claimant can occasionally reach overhead with bilateral upper extremities. The claimant must avoid concentrated exposure to extreme cold, wetness, and humidity.

(AR 13.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" he rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record[.]" (AR 15.) At step five, the ALJ found that Plaintiff could perform past relevant work as a tax preparer, payroll supervisor, benefits manager, and payroll clerk. (AR 19–20.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on May 18, 2018. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

## III. LEGAL STANDARD

### A. Applicable Law

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P,

[a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.    Scope of Review**

"This court may set aside the Commissioner's denial of disability insurance benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review …" *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 (citations omitted) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins*, 466 F.3d at 885). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.    DISCUSSION

Plaintiff contends that the ALJ erred in formulating Plaintiff's RFC by failing to include in the RFC limitations related to Plaintiff's severe impairment of migraines because the ALJ improperly discounted Plaintiff's subjective complaints of migraine symptoms and improperly gave little weight to Dr. Leamer's opinion about Plaintiff's migraines. (*See* Doc. 12 at 10–12.) The Commissioner responds that the ALJ's RFC determination was supported by substantial evidence because the ALJ gave valid reasons for discounting Plaintiff's subjective statements about her migraines and for assigning little weight to Dr. Leamer's opinion about the migraines, and because the medical evidence supports the RFC determination. (*See* Doc. 13 at 6–10.) The Court agrees with Plaintiff's position that the ALJ erred in formulating Plaintiff's RFC because the ALJ improperly discounted or failed to consider Plaintiff's subjective testimony about her migraines which, if credited, would require limitations related to her migraines to be included in the RFC.

### A.    The ALJ Erred in Formulating Plaintiff's RFC

#### 1.    The ALJ Failed to Articulate Specific, Clear and Convincing Reasons to Discredit Plaintiff's Subjective Complaints of Migraine Symptoms

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ

must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives "specific, clear and convincing reasons" for the rejection. *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti,* 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009); 20 C.F.R. § 404.1529. Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also Vasquez*, 572 F.3d at 592 ("To support a lack of credibility finding, the ALJ [is] required to 'point to specific facts in the record which demonstrate that [the claimant] is in less pain than [he] claims'")

(quoting *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)); *cf. Burrell*, 775 F.3d at 1138 (the Ninth Circuit's "decisions make clear that [courts] may not take a general finding … and comb the administrative record to find specific" support for the finding).

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 15.) The ALJ also found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (AR 15.) Since the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for his adverse credibility finding. *See Vasquez*, 572 F.3d at 591.

The ALJ found that Plaintiff's symptom statements were less than credible because (1) her alleged symptoms were inconsistent with the medical evidence including statements she made to treatment providers (AR 15–16); and (2) her work history is inconsistent with her alleged symptoms (AR 15.) Plaintiff contends that the ALJ failed to properly evaluate her subjective complaints related to her migraines and instead gave only "a summary of the objective medical evidence" that did not "offer any insight as to whether the ALJ was attempting to discredit or support plaintiff's allegations of disabling migraine pain." (Doc. 12 at 11.) The Court agrees that the ALJ erred in discounting Plaintiff's statements related specifically to her migraines, and that error was not harmless.

### a. Objective Evidence of Record

The ALJ discounted Plaintiff's testimony because her alleged symptoms were inconsistent with the objective evidence of record, including relevant medical evidence and statements made to treatment providers during the application process. (*See* AR 15–19.) The Court finds this is not a valid clear and convincing reason to discredit Plaintiff's testimony specific to her migraine pain.

"[T]he Ninth Circuit has repeatedly emphasized that, 'in evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain.'" *Ondracek v. Comm'r of Soc. Sec.*, No. 1:15-cv-

01308-SKO, 2017 WL 714374, at *8 (E.D. Cal. Feb. 22, 2017) (quoting *Burch*, 400 F.3d at 680); *see, e.g., Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("[S]ubjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence …"); *see also* SSR 96–7p ("An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence."). Nonetheless, "lack of medical evidence … is a factor that the ALJ can consider in his credibility analysis." *Burch*, 400 F.3d at 681. Stated differently, "[a]lthough the inconsistency of objective findings with subjective claims may not be the sole reason for rejecting subjective complaints of pain, it is one factor which may be considered with others." *Salas v. Colvin*, No. 1:13-cv-00429-BAM, 2014 WL 4186555, at *6 (E.D. Cal. Aug. 21, 2014) (citations omitted).

Here, the ALJ's analysis of Plaintiff's testimony is problematic because it addresses only some aspects of Plaintiff's subjective complaints of pain—namely, her complaints of orthopedic pain—and fails to address Plaintiff's complaints of migraine pain aside from reciting without comment certain statements Plaintiff made about her migraines. (*See generally* AR 15–19.) For example, the ALJ detailed examinations and testing that showed normal or mild findings regarding Plaintiff's back and neck problems. (*See* AR 15 (stating physical examination on November 19, 2014 was "normal, with normal neck Range of Motion (ROM) and no complaints of evidence of musculoskeletal problems"; noting examination on March 31, 2014 was "within normal" and included physician discussing "acceptable level of activities and spinal precautions"; AR 16 (noting that an early 2013 MRI of Plaintiff's neck and back was "normal"); AR 17 (stating that on March 31, 2014 Plaintiff's lumbar spine was "stable, with hardware intact and no significant change in position, alignment, disc height, or vertebral body heights"; noting that a September 21, 2014 MRI "showed no recurrent herniation or other postsurgical complications, and no findings to explain the claimant's worsening pain symptoms as reported.")) These examinations do not undermine Plaintiff's testimony regarding her migraines, however, and relate only to her orthopedic complaints.

The ALJ also discussed inconsistencies between Plaintiff's testimony and statements she made to treatment providers. (*See, e.g.,* AR 15 (stating that in October 2013 Plaintiff told medical

personnel she was working, and in November 2013 told a State agency consultative examiner she was not working, noting that Plaintiff stated in a pain questionnaire she was unable to travel but traveled to Hawaii in May 2016.))  These alleged inconsistencies similarly do not involve Plaintiff's testimony about her migraines, however, and the ALJ does not explain how any of this evidence discredits Plaintiff's subjective complaints of migraine pain.  Thus, to the extent the discussion of these alleged inconsistencies was meant to discredit Plaintiff's subjective testimony about her migraines, the Court finds this is not a valid clear and convincing reason to discredit the testimony.  *See Lingenfelter*, 504 F.3d at 1036–37.

The ALJ only mentions Plaintiff's migraines twice in his discussion of Plaintiff's RFC and the credibility of her subjective symptom statements.  The ALJ first notes that:

> [Plaintiff] had a history of reported migraine headaches, and a treatment record from July 16, 2015 stated that she had Botox injections about every 2-4 months from June 2012 to November 2014.  [Plaintiff] reported that a combination of Topamax and Botox had worked well, and nortriptyline had been prescribed but was ineffective [].

(AR 17.)  The ALJ's only other mention of Plaintiff's migraines states:

> On October 19, 2015, [Plaintiff] reported while on vacation she didn't "feel quite right" after taking her morning one[-]mile walk, she stated she felt lightheaded and dizzy [].  No specific treatment was recommended, and at examinations on October 28, 2015, December 1, 2015, and January 15, 2016, [Plaintiff] stated that she had no headache or nausea, just recurring migraines, but no chest pain or shortness of breath.

(AR 17–18.)  It is not clear from either of these statements whether the ALJ is attempting to credit, discredit, or simply summarize portions of Plaintiff's subjective complaints about her migraines.  The ALJ provides no guidance as to which disabling effects of Plaintiff's migraines the ALJ believes to be undermined by which aspects of the record.  To satisfy the clear and convincing reasons standard, the ALJ must be specific about what subjective complaints are contradicted by which clinical observations in the record.  *See Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017) (citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 489, 494 (9th Cir. 2015)); *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999) (holding that an ALJ's determination that a claimant was not credible because his "complaints are 'inconsistent with clinical observations' …

could satisfy the requirement of a clear and convincing reason for discrediting a claimant's testimony, except that the ALJ did not specify what complaints are contradicted by what clinical observations.").

Here, the ALJ referenced that Plaintiff has recurring migraines, takes medications for them, and receives Botox injections, but did not specify whether these statements were favorable or unfavorable for her and whether they hurt or help her credibility. (*See* AR 17–18.) Assuming the ALJ meant to say that these statements are not credible, the ALJ pointed to no evidence that undermines the statements and gave no explanation why the statements are not credible. The Court cannot speculate as to *how* the ALJ determined these statements are undermined by the evidence. *See Brown-Hunter*, 806 F.3d at 494–95 ("We cannot review whether the ALJ provided specific, clear and convincing reasons for rejecting [claimant's] pain testimony where, as here, the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony … In sum, we cannot substitute our conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions."). The Court therefore finds no valid clear and convincing reason to discredit Plaintiff's migraine testimony in the ALJ's discussion of the objective evidence of record.

### b.    Reason for Work Cessation

The ALJ also discredited Plaintiff's testimony generally by stating that Plaintiff "told a State agency Consultative Examiner (CE) in 2013 that she stopped working in 2011 because her employer, laid off her [sic], suggesting that she stopped working for non-medical reasons[]." (AR 15.) The ALJ stopped his discussion on this point there, though, and gave no explanation as to whether he was discrediting Plaintiff's subjective complaints on this basis, or whether it somehow undermined Plaintiff's subjective symptoms or the limitations they cause. *See Kalani v. Colvin*, No. 13-cv-04591-KAW, 2015 WL 1250719, at *6 (N.D. Cal. Mar. 18, 2015) (The ALJ's failure to articulate inconsistencies in his credibility determination "is enough to reject his judgment that

Plaintiff's reason for leaving her former employment undermines her credibility"); *Geary v. Berryhill*, No. 1:17-cv-01340-SKO, 2018 WL 6182186, at *12 (E.D. Cal. Nov. 27, 2018). Further, the ALJ found that Plaintiff continued to work periodically through 2016 and found that the work she engaged in did not rise to substantial gainful activity levels, so the relevance of her reason for leaving a job in 2011 to her credibility is unclear.[9] (*See* AR 11.) Finally, the ALJ certainly did not explain how this relates to or undermines Plaintiff's statements about the limiting effects of her migraines. Thus, the Court finds that this is not a valid clear and convincing reason to discredit Plaintiff's testimony either. *See Geary*, 2018 WL 6182186, at *12–13.

In sum, the ALJ's opinion does not meet the clear and convincing standard because the ALJ failed to adequately identify which of Plaintiff's statements about her migraines he found not credible and articulate the nexus between those statements that the ALJ discredited and the portions of the record that supposedly undermine them. In effect, the ALJ failed to discuss Plaintiff's statements about her severe impairment of migraines at all, aside from reciting two statements without commenting on their credibility. The Court also notes that, importantly and as explained below, the ALJ did not even mention Plaintiff's testimony that she took Relpax twice a week for intense migraine episodes and that she needed to lay down for approximately two hours each time she took Relpax, which was essentially the main subject of multiple hypotheticals posed to the VE at the end of Plaintiff's hearing. (See AR 42–43, 60–63.)

### 2. The ALJ Erred in Failing to Include Limitations Related to Plaintiff's Severe Impairment of Migraines in the RFC Assessment

An individual's RFC is his or her ability to do sustained work activities despite limitations from any impairments. 20 C.F.R. § 404.1545(a). The RFC assessment considers any symptoms related to a claimant's impairment(s), such as pain, that may limit what the claimant can do in a work setting. *Id.* The ALJ must assess all the relevant evidence, including evidence regarding

---

[9] The ALJ does not compare this statement that Plaintiff was laid off from her job in 2011 to any other statement in the record, such as a contradictory statement that she left the job for medical reasons. (*See* AR 15.) As noted above, the Court cannot speculate as to the point the ALJ was attempting to make by noting this statement in his opinion. *Brown-Hunter*, 806 F.3d at 494–95.

symptoms that are not severe, to determine if the claimant retains the ability to work on a "regular and continuing basis," *e.g.*, eight hours a day, five days a week. *Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998); *Lester*, 81 F.3d at 833; *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, Social Security Ruling ("SSR") 96–8p (S.S.A. July 2, 1996). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins*, 466 F.3d at 883. The ALJ is required to consider any medically determinable impairment including severe and nonsevere conditions in developing Plaintiff's RFC. 20 C.F.R. § 404.1545(a)(2); SSR 96–8. "In determining a claimant's RFC, … '[c]areful consideration [must] be given to any evidence about symptoms 'because subjective descriptions may indicate more severe limitations or restrictions than can be shown by medical evidence alone.'" *Lingenfelter*, 504 F.3d at 1040–41 (quoting *Robbins*, 466 F.3d at 883).

In *Lingenfelter*, the ALJ determined that the claimant's testimony as to "additional limitations that would establish a significantly lower RFC" was not credible. 504 F.3d at 1034. Part of the claimant's testimony was that he needed "to lie down two to three times a day for up to 45 minutes," which the VE determined would preclude the claimant from performing any job in the national economy. *Id.* at 1035. The ALJ explained that he found the testimony not credible because it was inconsistent with the medical evidence and because the claimant's nine weeks of work after his alleged disability onset date undermined his assertion that he was unable to work. *Id.* at 1034. The Ninth Circuit reversed the Commissioner's denial of benefits and held that the ALJ's reasons for discounting the claimant's testimony did not meet the clear and convincing standard. *Id.* at 1036–37. The Ninth Circuit explained that because the ALJ failed to provide clear and convincing reasons for finding the claimant's symptoms not credible, the ALJ "was required to include these limitations in his assessment of [the claimant's] RFC." *Id.* at 1035.

Here, as explained above, Plaintiff testified to significant limitations caused by her severe

impairment of migraines including feeling "fuzzy-headed" when taking Fiorinal and needing to lay down in the dark for two hours twice a week after taking Relpax. (*See* AR 42–43, 60–63.) Not only did the ALJ fail to meaningfully analyze the portions of Plaintiff's testimony regarding her migraines discussed in the opinion, but he also completely disregarded Plaintiff's testimony regarding these significant limitations. Like in *Lingenfelter*, because the ALJ failed to provide clear and convincing reasons (or any reasons at all) for disregarding these symptoms or finding them not credible, the ALJ was required to include the limitations in the RFC assessment. *See* 504 F.3d at 1035.

The ALJ gave no reasons for discrediting Plaintiff's professed limitations caused by her severe impairment of migraines and did not discuss them at all in the RFC assessment. The ALJ's failure to do so constitutes reversible error because the Court cannot determine whether the ALJ's RFC determination accounted for all of Plaintiff's limitations, including her migraine limitations. *See Brown-Hunter*, 806 F.3d at 494–95; *Geary*, 2018 WL 6182186, at *13; *see also Lingenfelter*, 504 F.3d at 1036.

**B.      The ALJ's Error Was Not Harmless**

The Court now turns to the analysis of whether this error by the ALJ was harmless. The Ninth Circuit "ha[s] long recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)); *see also Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 932 n.10 (9th Cir. 2014) (stating that the harmless error analysis applies where the ALJ errs by not discharging their duty to develop the record). As such, "the court will not reverse an ALJ's decision for harmless error." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citing *Robbins*, 466 F.3d at 885).

An error is harmless "where it is inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (citations omitted); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (stating that an error is also harmless "'if the

agency's path may reasonably be discerned,' even if the agency 'explains its decision with less than ideal clarity'" (quoting *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004)). "In other words, in each case [courts] look at the record as a whole to determine whether the error alters the outcome of the case." *Molina*, 674 F.3d at 1115. "[T]he nature of [the] application" of the "harmless error analysis to social security cases" is "fact-intensive—'no presumptions operate' and '[courts] must analyze harmlessness in light of the circumstances of the case.'" *March v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (quoting *Molina*, 674 F.3d at 1121). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki*, 556 U.S. at 409 (citations omitted).

Here, the record establishes that the ALJ's error was not harmless. As noted above, Plaintiff testified that she takes Relpax when she experiences a severe migraine, which happens about twice a week, and each time she takes Relpax she needs to lay down and rest for two hours at a time. (AR 42–43, 55.) She also testified that the Fiorinal she takes makes her "fuzzy-headed." (AR 43.) At step five of the sequential evaluation process, the ALJ found that Plaintiff was not disabled because she could perform past relevant work as a tax preparer, payroll supervisor, benefits manager, and payroll clerk as the work did not require performance of activities precluded by Plaintiff's RFC. (AR 19.) In making this finding, the ALJ relied on the VE's response to hypotheticals that omitted the limitation related to absences, breaks and being unable to sustain a work schedule of eight hours a day, five days a week. (*See* AR 19–20; *see also* AR 59–62.)

The VE responded to those hypotheticals by stating that the hypothetical individual who had these limitations would not be able to perform any jobs in the national economy including Plaintiff's past relevant work. (AR 61–62.) Plaintiff's counsel also asked the VE a hypothetical that included a limitation of being off task 15 percent of the day due to side effects of medication and migraines. (AR 62.) The VE responded that the hypothetical individual who had that limitation would not be able to perform any jobs in the national economy. (AR 62–63.)

The VE's response to the hypotheticals provided by the ALJ and Plaintiff's counsel demonstrates that the ALJ's step five finding may have been different had the ALJ credited Plaintiff's subjective pain testimony related to her migraines—especially the testimony that she

needs to lay down for a total of four hours every week. (*See* AR 42–43.) At a minimum, this would likely preclude Plaintiff from sustaining a work schedule of eight hours a day, five days a week, but may also result in three or more unscheduled absences a month, taking additional breaks, or being off task 15 percent of the time, especially when considered in conjunction with Plaintiff's reported side effects of taking Fiorinal. (*See* AR 61–62.) The ALJ failed to credit or discredit Plaintiff's testimony on that point, though, and failed to explain why, if credited, the reported symptoms would not result in any limitations on Plaintiff's RFC, including the hypothetical limitations posed to the VE. Thus, the Court finds that the ALJ's error was not inconsequential to the ultimate disability determination. The Court therefore also finds that the ALJ's error was not harmless, *see, e.g., Molina*, 674 F.3d at 1115 (citations omitted) (stating that an error is harmless "where it is inconsequential to the ultimate nondisability determination"), and the remand of this matter is appropriate.

## C. The ALJ's Error Warrants Remand for Further Proceedings

In her briefing, Plaintiff requests that the Court "reverse the ALJ's decision and award benefits; or, remand this case for further hearing at the administrative level." (Doc. 12 at 13.) Plaintiff does not provide support for her position that an award of benefits is more appropriate than a remand to the agency for further proceedings. The Commissioner responds that if the ALJ's decision is reversed, the proper remedy is a remand for further proceedings. (Doc. 13 at 10–11.) The Commissioner argues that an award of benefits here is inappropriate as the Court may not "simply 'credit' evidence the ALJ did not properly address and award benefits" and must determine whether further administrative proceedings would be useful for the ALJ to properly address such evidence. (Doc. 13 at 10.) The Court agrees with the Commissioner and finds that an order for payment of benefits is inappropriate here.

Where the ALJ commits an error and that error is not harmless, the "ordinary … rule" is "to remand to the agency for additional investigation or explanation." *Treichler*, 775 F.3d at 1099

(citations omitted). The Ninth Circuit recognized a limited exception to this typical course where courts "remand[] for an award of benefits instead of further proceedings." *Id.* at 1100–01 (citations omitted); *see also id.* at 1100 (noting that this exception is "sometimes referred to as the 'credit-as-true' rule"). In determining whether to apply this exception to the "ordinary remand rule," the court must determine, in part, whether (1) "the record has been fully developed;" (2) "there are outstanding issues that must be resolved before a determination of disability can be made;" and (3) "further administrative proceedings would be useful." *Id.* at 1101 (citations omitted). As to the last inquiry, additional "[a]dministrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence . . . may well prove enlightening in light of the passage of time." *Id.* (citations omitted). Ultimately, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion." *Swenson*, 876 F.2d at 689 (citation omitted).

Here, the Court finds that the "credit-as-true" exception to the "ordinary remand rule" is inapplicable because additional administrative proceedings would be useful. This is especially true here because the ALJ failed to address the credibility of Plaintiff's testimony regarding her migraines at all and gave no reason for discounting it and failing to include appropriate limitations in the RFC assessment. As noted above, in *Lingenfelter*, the ALJ gave specific reasons for discounting the plaintiff's subjective complaints, but the Ninth Circuit found those reasons insufficient. 504 F.3d at 1036–37. The court in that case remanded to the ALJ for a calculation and award of benefits because taking the plaintiff's subjective complaints as true, a finding of disability was clearly required, and the ALJ fully considered the subjective complaints but discounted them for specific reasons that were found to be insufficient. *See id.* at 1036-37, 1041. Here, the ALJ completely failed to consider the credibility of Plaintiff's subjective complaints regarding her migraines and gave no specific reasons for discounting her testimony on that issue. Thus, there may be specific, clear and convincing reasons the ALJ can offer for discounting the testimony and failing to include related limitations in the RFC assessment. Further proceedings would therefore be useful to allow the ALJ to resolve this "outstanding issue[]" before a proper disability determination can be made. *See Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988). On

remand, the ALJ should address this error by properly evaluating Plaintiff's subjective complaints of pain regarding her severe impairment of migraines, and properly assessing Plaintiff's RFC.

Accordingly, the Court will remand this case for further proceedings.

**D.     The Court Declines to Determine Plaintiff's Remaining Assertions of Error**

As the Court finds that remand is appropriate for the ALJ to reconsider Plaintiff's subjective complaints of pain regarding her severe impairment of migraines and re-assess Plaintiff's RFC and her migraine limitations, the Court does not determine Plaintiff's additional assertion of error regarding the ALJ's evaluation of Dr. Leamer's opinion.  (*See* Doc. 12 at 11; Doc. 13 at 6–7); *cf. Newton v. Colvin*, No. 2:13-cv-2458-GEB-EFB, 2015 WL 1136477, at *6 n.4 (E.D. Cal. Mar. 12, 2015) ("As the matter must be remanded for further consideration of the medical evidence, the court declines to address plaintiff's remaining arguments"); *Willmett ex rel. A.P. v. Astrue*, No. 2:10-cv-01201 KJN, 2011 WL 3816284, at *1 (E.D. Cal. Aug. 25, 2011) ("Because this legal error warrants remanding this matter for further proceedings, the undersigned does not reach the remainder of [the] plaintiff's arguments seeking reversal of the ALJ's and Appeals Council's decisions.").

## V.     CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Denise Marie Bennett and against Defendant Nancy A. Berryhill, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **June 6, 2019**                            /s/ *Sheila K. Oberto*
                                                      UNITED STATES MAGISTRATE JUDGE